**UNITED STATES of America,**
**Appellant,**

v.

**Gordon Vincent EASTMAN and Anthony Hueston * a/k/a Tony Heston, a/k/a Tony DeJest.**

**Nos. 71–1643, 71–1644.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 17, 1971.

Submitted April 5, 1972.

Decided Aug. 8, 1972.

---

* Hueston is spelled in various ways in various documents, but he was indicted as "Hueston."

K. Gregory Haynes, Atty., Dept. of Justice—Crim. Div., Washington, D. C. (S. John Cottone, U. S. Atty., M.D.Pa., on brief), for appellant.

George J. Bellantoni, Bellantoni & Gavin, White Plains, N. Y., for appellees.

Before BIGGS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

This case presents unusual circumstances as will appear hereinafter. It arises under Criminal Procedure, Eavesdropping Warrants, Chapter 546, § 814, et seq., McKinney's 1968 Session Laws of New York, 191st Session, and the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20.

The appeals at bar arise from the same criminal proceedings in the Middle District of Pennsylvania. Hueston and Eastman were indicted for unlawful manufacture of drugs in violation of 21 U.S.C. § 331(q)(1)[1] and 18 U.S.C. § 2. Prior to trial, Hueston, but not Eastman,[2] filed a motion to suppress the contents of intercepted telephone communications and all evidence derived therefrom. Hueston's motion was heard on May 19, 1971 and the District Judge granted it.[3] The United States has ap-

---

1. In 1970, Public Law 91–513 recodified subsection (q) of 21 U.S.C. § 331, and the manufacture, sale, disposition, possession and other traffic in stimulant and depressant drugs are regulated now under 21 U.S.C. § 801 et seq.

2. Hueston is represented by other counsel than Eastman's and this counsel has filed a brief in this court, but since Eastman filed no motion to suppress we doubt the standing of his counsel to file a brief here. The notice of appeal by the United States states that the District Judge sustained "defendants'" motion to suppress (i. e., the word "defendants'" is plural, with a caret directly under the apostrophe, written apparently in ink). Even if this notice of appeal purports to relate to both defendants, it will not suffice to give standing to Eastman. We will, however, treat Eastman's brief as if it had been filed in this court *amicus curiae*.

3. Judge Muir's order of May 27, 1971 was as follows: "In accordance with the Opinion filed this day, it is ordered that the motion made by the defendant Hueston to suppress is hereby granted and it is further ordered that the contents of any intercepted wire or oral communication, or evidence derived therefrom, obtained pursuant to the Order of the Supreme Court, 9th Judicial District, State of New York, dated June 2, 1969, and any extension of that Order, shall be treated as having been obtained in violation of Chapter 119, Title 18, United States Code, 18 U. S.C. § 2510 et seq."

Judge Muir's opinion, 326 F.Supp. 1038, 1039 (M.D.Pa.1971), stated in part:

"On June 2, 1969, upon application of the District Attorney of Rockland County, New York, a judge of that county [Justice Clare J. Hoyt] issued an order authorizing the interception of the defendant's [Hueston's] telephone communications over a given telephone number. The judge concluded his order with the statement ' . . . notice to the said Tony DeJest . . . is hereby expressly waived.' The telephone line was tapped during June and July, 1969, pursuant thereto.

"The United States Attorney has given notice to the defendant that he intends to use evidence derived from the wiretap in the defendant's forthcoming trial.

"It is admitted that the issuing judge never caused to be served on the defendant the inventory, including notice, as required by 18 U.S.C. § 2518(8)(d) and [that] he never postponed the service thereof as he might have done under that section. The order indicates that the issuing judge intentionally eliminated the service of the inventory and notice.*

"The government takes the position that the failure to serve the inventory and notice is not fatal. My view is otherwise.

\* \* \* \* \*

"The provision for service of the inventory and notice is an absolutely necessary link in the chain of protective

pealed, the District Judge having granted the certificate required by 18 U.S.C. § 3731 and § 2518(10) (b). The wiretaps have been certified to this court *in camera* and an examination indicates that they are incriminating.

The language of the wiretap warrant with particular regard to the period during which the warrant was to be effective was: Law officers "[a]re further commanded that such eavesdropping shall take effect on June 2, 1969, *or as soon thereafter as is reasonably practicable* and that such eavesdropping shall not cease after any one or more of the above described conversations shall have been overheard, but shall cease at the close of the twentieth calendar date after the above mentioned, To Wit: On June 22, 1969, *or on the day thereafter which is twenty (20) calendar days after the date of actual installation, whichever last occurs* and that such eavesdropping may be conducted at all hours of the day and night . . . ." (Emphasis added). The date of the warrant was June 2, 1969. Not all the wiretaps which have been received and examined *in camera* are within the permissible pe-

riod, but in view of our decision it is not necessary to discuss this point.[4] The statute under which Justice Hoyt issued the wiretap warrant on June 2, 1969 was § 819.2, c. 546, McKinney's 1968 Session Laws of New York (repealed June 25, 1969), which provided that an eavesdropping warrant must contain: "The date of issuance, date of effect, if known, and termination date" and stated that "[t]he effective period of the warrant must not exceed twenty days. . . . ."[5] Section 823.1 of the statute provided for "written notice and return" to be served on the person whose line had been tapped "[n]ot later than sixty days after termination of the eavesdropping warrant. . . ." The first tap was installed on June 3, 1969. It follows, therefore, that the authorized period of the wiretaps ran out on June 23, 1969. There is no statement in the statute as to who shall give the required written notice to the individual whose line has been tapped. There is nothing in the record which indicates that any notice at any time was given to Hueston respecting the wiretaps. The last line of Justice Hoyt's order constituting the

---

measures built into the statute. 'Standards Relating to Electronic Surveillance,' American Bar Association Project on Minimum Standards for Criminal Justice, Tentative Draft of June, 1968, Comment at page 162, final draft adopted A.B.A. House of Delegates, February 8, 1971.

"In Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court struck down a New York wiretapping statute because it did not contain, inter alia, a requirement of notice to the person whose wire had been tapped. In passing, I note that the New York statute in effect at the time of the wiretap in this case, obviously enacted in response to *Berger*, requires notice to the defendant within ninety [*sic*] days of the termination of the tap, unless a postponement for a reasonable period of time is ordered. New York Code of Criminal Procedure, § 823, effective June 5, 1968.

"In my view, the failure to serve the requisite inventory and notice vitiates the wiretap and precludes the use of evidence derived therefrom."

---

\* Examination of the record demonstrates the correctness of these statements.

4. We point out nonetheless that in United States v. Sterling, 369 F.2d 799, 802 (3 Cir. 1966), we stated: "Nevertheless, the law is quite clear that the inclusion of illegally obtained evidence does not vitiate a search warrant which is otherwise validly issued upon probable cause reflected in the affidavit and based upon proper sources." But cf. United States v. Scott, 331 F.Supp. 233, 247–249 (D.D.C.1971), where the indiscriminate 100% taking in of all calls did not sufficiently limit the wiretaps as required by the District of Columbia statute and hence all were suppressed.

5. It should be noted that the New York statutes cited above were supplanted by L.1970, c. 996, § 1; N.Y. CPL §§ 700.10–700.70 (McKinney 1971). Section 700.10 (2) provides that no eavesdropping warrant can be effective ". . . in any event longer than thirty days." Accord, 18 U.S.C. § 2518(5).

eavesdropping warrant states: ". . . *notice* to the said Tony DeJest and the said Bonnie Kerr *is hereby expressly waived.*" (Emphasis added). Compare the language of Judge Muir's opinion hereinbefore set out at note 3, *supra.*

The federal statute which provides for the actual issuance of wiretaps, 18 U.S. C. § 2518(4),[6] is set out in the margin and the record shows that all of its provisions, *viz.,* (4)(a) to (4)(e), inclusive, were conformed to by Justice Hoyt when he issued his warrant. In short, the specifications of the federal statute have been followed insofar as subsection (4) is concerned.

We note that at page 160 of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Electronic Surveillance, "Approved Draft 1971," it is stated: "A failure to make a correct return or to file the inventory, noted below, however, should result in the suppression of evidence only where prejudice is shown. See Evans v. United States, 242 F.2d 534 (6 Cir.), cert. denied, 353 U.S. 976, [77 S.Ct. 1059, 1 L. Ed.2d 1137] (1957); United States v. Gross, 137 F.Supp. 244, 248 (S.D.N.Y. 1956) (return ordered in lieu of suppression)." The Government takes the position that the rule that prejudice must be shown by reason of the fact that Hueston did not receive the notice or inventory required by the New York and Federal statutes for § 2518(8)(d) is an attempt to "reflect existing search warrant practice" under Rule 41(d), Fed.R.Crim.Proc., 18 U.S.C. See S.Rept. 1097, 90th Cong. 2d Sess. 105 (1968). The Government's contention is based on the fact that the record shows that Hueston was aware of the wiretaps at least by September 26, 1969 because he filed a motion in the New York State Court requesting an order of discovery and an inspection of the wiretap order and its supporting affidavit.[7] The Government cites United States v. Haskins, 345 F.2d 111, 117 (6 Cir. 1965); Gilbert v. United States, 291 F.2d 586, 588 (9 Cir. 1961); Evans v. United States, *supra* at 536 of 242 F.2d. In United States v. Averell, 296 F.Supp. 1004 (E. D.N.Y.1969), a delay in filing the war-

---

6. 18 U.S.C. § 2518(4) is as follows: "Each order authorizing or approving the interception of any wire or oral communication shall specify—

"(a) the identity of the person, if known, whose communications are to be intercepted;

"(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

"(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

"(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained."

7. The Government's brief states at 6: "On September 26, 1969, defendant Hueston [by his then counsel Auerbach] filed a motion in state court requesting an order of discovery and inspection of this wiretap order and its supporting affidavit. Obviously, such a motion could be filed only if the defendants had notice that a wiretap had been used, and simple arithmetic reveals that the motion was filed within ninety days of July 1969. The record does not disclose whether this information was gained from notice by New York State officials or from the defendants own independent sources of information. At that point, however, the issuance of a formal notice and inventory under section 2518(8)(d) would not have given the defendants any significant information about the wiretap that they did not already possess. Under these circumstances, it is our position that there is no reason to suppress the evidence because of the failure to follow the formal notice procedure set forth in section 2518(8) (d)."

In support of its position the Government cites the existing search warrant practice, contending that notice requirements are intended primarily to insure the defense an adequate remedy to move to suppress seized items prior to their admission into evidence and contending that prejudice must be shown.

rant return and inventory of seized items for a period of two and one-half years was held not to vitiate the warrant so long as the proper notice is given prior to admission of the items in evidence.[8] The Government goes on to assert that the failure to make a correct return or to file proper notice is a "ministerial act" and should result in suppression only where prejudice is shown, citing McGuire v. United States, 273 U. S. 95, 47 S.Ct. 259, 71 L.Ed. 556 (1927); United States v. Haskins, *supra;* Evans v. United States, *supra;* Giacolone v. United States, 13 F.2d 108 (9 Cir. 1926); Rose v. United States, 274 F. 245 (6 Cir.), cert. denied 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921); United States v. Callahan, 17 F.2d 937 (M. D.Pa.1927).

We cannot agree with the Government's position for two reasons:

(1) 18 U.S.C. § 2518(10)(a) states *inter alia,* "Any aggrieved person in any trial . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—(i) *the communication was unlawfully intercepted*; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." (Emphasis added). As is pointed out in the admirable opinion of Judge Becker in United States v. Narducci[9] in a closely analogous situation, an exclusionary rule has been written into the Act by § 2515, which states, *inter alia:* "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . before any court . . . *if the disclosure of that information would be* in violation of this chapter." (Emphasis added). That § 2515 is exclusionary is now settled beyond all doubt by Gelbard v. United States, and United States v. Egan, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

In the case at bar we have the extraordinary circumstance of an advertence to the provisions respecting "written notice" as required by the New York Statute, § 823.1 of McKinney's 1968 Session Laws of New York, and the inventory required by 18 U.S.C. § 2518(8) (d) and an express failure by the New York Justice to adhere to these provisions. We point out that the inventory requires the equivalent of notice of the New York Statute for the statute provides for "an inventory which shall include notice of—(1) the fact of the entry of the order or the application; (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and (3) the fact that during the period wire or oral communications were or were not intercepted." The inventory must be filed within ninety days after the filing of the application for a wire tap order under § 2518(7)(b) or within sixty days after the termination of the eavesdropping warrant as provided by the New York statute.

The legislative history, 1968 U. S.Code Cong. and Adm.News, at pp.

---

8. The Government states the following in its brief at 8, note 7: "Significantly, § 2518(9) makes additional provision for notice 10 days prior to trial. The Senate Report notes that, 'The 10 day period is designed to give the party an opportunity to make a pretrial motion to suppress . . . .' (1968 U.S. Code Cong. and Adm. News, p. 2195). There can be no doubt that there was complete compliance with this provision since the defendants made timely motions to suppress prior to trial in the state court."

We note that 18 U.S.C. § 2518(9) requires a showing of prejudice and that 18 U.S.C. § 2518(8)(d) does not.

For reasons that will appear at later points in this opinion we are unable to see how the statement quoted from the Government's brief is of aid to the Government's position in the circumstances at bar.

9. 341 F.Supp. 1107 (E.D.Pa.1972), Part "IV." In *Narducci* the wiretap was not properly authorized because the Attorney General had not followed 18 U.S.C. § 2516 (1), Title III of the Federal Act.

2184–85, states: "Section 2515 of the new chapter imposes an *evidentiary sanction to compel compliance with the other prohibitions of the chapter. . . . The provision must, of course, be read in light of § 2518(10)(a) discussed below, which defines the class entitled to make a motion to suppress. . . .* The provision thus forms an integral part of the system of limitations designed to protect privacy. Along with the criminal and civil remedies, it should serve to guarantee that the standards of the new chapter will sharply curtail the unlawful interception of wire and oral communications." (Emphasis added). Thus the Congressional intent to insure compliance with the dictates of the law authorizing wiretaps by means of the exclusionary rule of § 2515 is clearly evident. The relationship between § 2515 and § 2518(10)(a) is thus demonstrated.

■ In order to determine if "the disclosure of that information [*i. e.,* the contents of the interception] would be in violation of this chapter," we look to §§ 2511, 2517, and 2518(8)(d). Section 2511 prohibits any wilful use of an interception "except as otherwise specifically provided in this chapter." Section 2517(3), as Judge Becker points out, is an exception to § 2511 and allows the disclosure of a wiretap at trial if "intercepted in accordance with the provisions of this chapter." Since the interception in this case was not in accordance with the provisions of this chapter, *i. e.,* § 2518(8)(d), as discussed above, it follows that the disclosure of the contents of the wiretap was in violation of this chapter, *i. e.,* "a willful use of an interception under § 2511 and the statutory rule would apply here." *Narducci, supra,* at 1117 of 341 F.Supp.

The inventory provisions of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2518(8)(d), have been construed rather broadly in this Circuit. In United States v. LaGorga, 336 F. Supp. 190 (W.D.Pa.1971), it was held that absent a showing of prejudice filing a delayed inventory was permissible. In *LaGorga* there had been extensions allowed by court order extending the time for filing the inventory for a period of about six months. Judge Weis, referring to the case at bar, stated that it could be distinguished because in *Eastman* there had been "*complete and deliberate failure to file any inventory.*" (Emphasis added). The touchstone of our decision on this aspect of the case at bar is not one in which an inventory was delayed but rather is one in which specific provisions of Title III were deliberately and advertently not followed. In other words the failure to file the notice or inventory is no mere ministerial act. It resulted from a judicial act which on its face deliberately flouted and denigrated the provisions of Title III designated for the protection of the public. This we cannot countenance. The communications were unlawfully intercepted. Therefore, the provisions of § 2518(10)(a)(i) apply and the motion to suppress must be granted.

(2) There is another reason, however, which perhaps may be even more cogent in the disposition of this case. The Federal statute and the New York statute here *sub judice* under which Justice Hoyt [10] issued the warrant, were we believe based in very large part upon the opinion of Mr. Justice Clark in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).[11] In *Berger,* Mr. Justice Clark laid great emphasis upon the constitutional safeguards required of an eavesdropping statute. In

10. Justice Hoyt died on February 20, 1970. See the letter to the writer from Administrative Judge Frank S. McCullough, which we make a part of the record herein.

11. In addition to Berger v. New York, it is entirely clear that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967) was in the mind of Congress when it framed the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20.

criticizing the New York statute, the predecessor to the New York statute presently before us, the Justice laid emphasis on the lack of notice required by the New York statute and made it clear that notice must be given to meet the constitutional standards of the Fourth Amendment. He stated, *id.*, at 60, 87 S.Ct. at 1884: "Finally, the statute's procedure, necessarily because its success depends on secrecy, has no requirement for notice as do conventional warrants, nor does it overcome this defect by requiring some showing of special facts. On the contrary, it permits unconsented entry without any showing of exigent circumstances. Such a showing of exigency, in order to avoid notice, would appear more important in eavesdropping, with its inherent dangers, than that required when conventional procedures of search and seizure are utilized. Nor does the statute provide for a return on the warrant thereby leaving full discretion in the officer as to the use of seized conversations of innocent as well as guilty parties. In short, the statute's blanket grant of permission to eavesdrop is without adequate judicial supervision or protective procedures." [12], [13]

 We construe the statutes, 18 U.S.C. § 2518(8)(d) and 18 U.S.C. § 2518(10)(a)(i), as requiring the exclusion of wiretaps secured in violation of their wording which implements the Fourth Amendment. The New York authorities have, therefore, proceed-

12. Section 814.4 of the New York Act seems based on Mr. Justice Clark's opinion. It defines "exigent circumstances": "Exigent circumstances" means conditions requiring the preservation of secrecy, and whereby there is a reasonable likelihood that a continuing investigation would be thwarted by alerting any of the persons subject to surveillance to the fact that such surveillance had occurred." § 823.2 states: "On a showing of exigent circumstances to the issuing justice the serving of the notice required by this section may be postponed by order of the justice for a reasonable period of time. Renewals of an order of postponement may be obtained on a new showing of exigent circumstances."

13. It has been asserted that 18 U.S.C. § 2518(9) compels a different conclusion. 18 U.S.C. § 2518(9) provides: "The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information." This provision, however, read in the light of the last sentence of 18 U.S.C. § 2518(8)(d) assumes a different aspect: "On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."

If the last sentence of 18 U.S.C. § 2518(8)(d) be employed for continuous postponements for good cause by a judge of competent jurisdiction, a situation could ensue whereby the wiretap even if issued on an invalid warrant could never be suppressed or its validity questioned and any issue presented by 18 U.S.C. § 2518(10)(a)(i) could not be adjudicated for the defendant could obtain no knowledge as to the illegality of the interception on which he could base an objection. It follows therefore that 18 U.S.C. § 2518(9) is intended to provide the defendant whose telephone has been subject to wiretap an opportunity to test the validity of the wiretapping authorization. In other words under the last sentence of 18 U.S.C. § 2518(8)(d) valid postponements of the serving of the inventory and examination of the warrant or authorization by the defendant might continue indefinitely even up to the time of or during trial were it not for the provisions of 18 U.S.C. § 2518(9). It seems logical to take the position that this was the purpose for which 18 U.S.C. § 2518(9) was enacted. What we have said is equally applicable to Section 823.2 of the New York Act. Note the provision therein relating to "postponement" or "postponements" for "exigent circumstances." See note 12, *supra.* Cf. *Narducci, supra,* at 1109 of 341 F.Supp. If our interpretation of the respective statutes be correct the basis of our reasoning in suppressing the wiretaps is sound.

ed in violation of Hueston's constitutional rights as guaranteed by that Amendment.[14]

On the narrow grounds stated, we conclude, as did the district court, that the wiretap evidence must be suppressed. Accordingly, the judgment will be affirmed.

---

14. We do not, of course, pass upon the constitutionality of the Federal statute. That issue is not before us. It has been held unconstitutional by Chief Judge Lord in the Eastern District of Pennsylvania, in United States v. Whitaker, 343 F.Supp. 358 (1972). See, however, the decisions cited in note 5 of *Whitaker* holding the statute constitutional.