No. 47,539

STATE OF KANSAS, *Appellee,* v. JON RICHARD DEFFENBAUGH, *Appellant.*

(533 P. 2d 1328)

Opinion filed April 5, 1975.

*Edward A. McConwell,* of Shawnee Mission, argued the cause, and was on the brief for the appellant.

*J. J. B. Wigglesworth,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Margaret Jordan,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Jon Richard Deffenbaugh, was convicted of five separate counts charging possession of illegal drugs—cocaine, morphine, methadone, marijuana, and amphetamines. Following the filing of the information the defendant by written motion moved to suppress certain evidence consisting of a quantity of drugs found in the defendant's possession at his home by police officers upon execution of a search warrant. The motion to suppress was over-

ruled. Defendant waived trial by jury and the case was tried to the court. The defendant was found guilty on all five counts. The defendant has appealed to this court claiming trial errors.

The factual circumstances as disclosed in the record are confusing since they must be pieced together from fragments of testimony given at the hearing on the defendant's motion to suppress evidence and testimony offered after conviction on the defendant's motion for a new trial. The factual difficulty arose in this case because the state did not want to disclose the name of an undercover informant who furnished the police officers the information on the basis of which a search warrant was issued for the search of the defendant's room at his home. It is clear from the record that for a number of months prior to April 16, 1973, Kirk Hiatt, a resident of Leawood, Kansas, had served as an undercover agent and informer for law enforcement agencies in Johnson county. His own testimony establishes the fact that he had provided information to the police about drug activities in the county on seven different occasions and had been paid money each time for such information. On April 11, 1973, a robbery occurred at the Kansas University Medical Center at which time narcotic drugs were taken. On April 16, 1973, shortly before noon the defendant Deffenbaugh, was at the home of Kirk Hiatt in Leawood. Hiatt's testimony, taken in another criminal case in Wyandotte county arising out of the robbery of the KU Medical Center, disclosed that he knew police officers were watching his home on April 16 when the defendant was there. Apparently police officers were keeping his home under surveillance in view of his participation in drug activities as an undercover agent for the police. At the same time defendant was in Hiatt's home, Steve Shults, a Leawood police officer, was parked at the intersection a short distance from the house. It was his testimony that the Hiatt house was not under surveillance but according to Hiatt's testimony such was not fact. Officer Shults observed the defendant Deffenbaugh leave the Hiatt home and proceed east in his automobile on 103rd Street. Shults stopped the defendant's vehicle and without a search warrant searched the defendant's vehicle. He then took the defendant Deffenbaugh to the Leawood police department where defendant was interrogated and his person was searched. He was then released. During the search of defendant there was discovered on his person a "list of things to do" and the names of certain people. The list of things to do led the police officers to

the home of Bruce Davis. There a blue box was discovered which contained evidence of having been used to contain drugs. Later that afternoon Davis was questioned by the police officers at the Leawood police station. During the interrogation Davis suggested to the police that Kirk Hiatt may have been involved in the KU Medical Center robbery. Davis also indicated that defendant Deffenbaugh owned a similar blue box. Davis was then released.

The record shows that on April 16 at approximately the same time the defendant was arrested by Officer Shults, Kirk Hiatt drove away in his automobile from his home and proceeded to Kansas City, Missouri. There Hiatt was stopped by Officer Buford who told Hiatt to "call Shults". Some time between 12:30 and 1:00 p. m. on April 16 Hiatt called Shults at the Leawood police department. There is nothing in the record to show that at the time of that call Hiatt knew that defendant had been arrested or that he was at the police station. In the telephone call Hiatt told Shults that he could provide information about the robbery of the KU Medical Center.

On the following day, April 17, 1973, Hiatt had discussions with the police officers about the medical center robbery. On the morning of April 18, Hiatt went to the Johnson county sheriff's office where he gave full and complete information to the police officers including the fact that Hiatt had observed a quantity of drugs in the defendant Deffenbaugh's room. Hiatt informed them that the narcotics were kept in a blue box. Shortly after noon on April 18 the police officers obtained from Magistrate Judge Earle D. Jones a search warrant for the search of the defendant's residence located in Overland Park. The affidavit for a search warrant which was presented to Magistrate Judge Earle D. Jones was as follows:

"AFFIDAVIT FOR SEARCH WARRANT

"Lewis Hoskins and Bruce Shuman, Johnson County Deputy Sheriffs, and Steve Shults, Leawood Police Department, affiants, now appear before the undersigned magistrate, authorized to issue warrants in criminal cases, and make this affidavit in support of the issuance of a search warrant to search the following described place:

"a residence located at 5231 West 96th Street, Overland Park, Johnson County, Kansas, a part of the Villa Medici, and the attic and garage connected therewith;

and there to seize, secure, tabulate and make return thereof according to law the following property or things which have been used in the commission of a crime or which are contraband or which is property which constitutes or may be considered evidence, fruits or instrumentalities of a crime:

"cocaine, methadone, dexadrines, morphine, demarol, marijuana and a blue-green metal box approximately 18″ x 6″ x 8″ with a combination type lock.

"Affiants say that they have probable cause to believe that the above listed things to be seized are located upon said described premises based upon the following facts:

"1. A reliable informant has advised affiants that he has seen quantities of the foregoing substances in the foregoing residence and also in the foregoing described box within (48) forty eight hours previous to the making of this affidavit.

"Affiant Steve Shults states this informant on two different occasions gave information which resulted in arrests for possession of marijuana; and later gave information for a search warrant for marijuana which resulted in an arrest and conviction.

"Affiant Bruce Shuman states that this informant has given information which has proven correct; and has on one occasion made arrangements for purchase of narcotics by an undercover agent, said purchase was actually made.

"Affiant Lewis Hoskins states that approximately five times in the past informant has given intelligence information concerning narcotics users and dealers which has proved reliable through sources at the Bureau of Narcotics and Dangerous Drugs and Drug Abuse Law Enforcement. Having known informant for three years, affiant Hoskins states that the informant has been a user and dealer in narcotics and therefore is able to recognize different kinds of narcotics as previously set forth.

"/s/   Lewis Hoskins
"/s/   Bruce Schuman
"/s/   Steve G. Shults

"Subscribed and sworn to before me this 18th day of April, 1973.

"/s/   Earle D. Jones."

Armed with a search warrant police officers went to the defendant's place of residence, searched his room, and discovered quantities of cocaine, morphine, methadone, amphetamines, and marijuana in a blue-green metal box. There was apparently no dispute that the box belonged to the defendant and that he had possession of illegal drugs. The defendant Deffenbaugh was arrested and charged with the five counts of possession of drugs as discussed above.

The defendant's motion to suppress the evidence found in his home was filed on June 1, 1973. In his motion the defendant alleged that the search of his motor vehicle and his person at the police station on April 16, 1973, was an illegal search since it was carried out without a search warrant and without probable cause; that the unlawful search on April 16, 1973, provided the information which brought about the search of the defendant's room on April 18, 1973; and that as a result thereof the search warrant and the evidence discovered thereby were tainted under the doctrine of the "fruit of the poisonous tree" and therefore the evidence obtained from the execution of the search warrant on April 18 should be suppressed.

On June 14, 1973, the district court conducted an evidentiary hearing on the defendant's motion to suppress. At this hearing there was testimony from Officer Shults in regard to the stopping and search of the defendant's vehicle and the subsequent search of defendant's person at the Leawood police station on April 16, 1973. Shults testified that the information which was included in the affidavit to obtain the search warrant on April 15 came from a confidential informant and was not the result of the interrogation and search of defendant Deffenbaugh on April 16. Officer Shults denied that he had any contact with the informant on April 16 and that his first conversation with the informant was on April 17. At this hearing there was also testimony from Detective Hoskins of the Johnson county sheriff's department about the information received from the confidential informant. Similar testimony came from Officer Allen Buford of the Leawood police department who had stopped Kirk Hiatt in Missouri. Bruce Davis testified that late in the afternoon of April 16 he had suggested that the police officers should contact Kirk Hiatt in regard to the KU Medical Center robbery.

Throughout this proceeding the state refused to reveal the name of its confidential informant and the trial court did not compel the state to do so. Counsel for the defendant was obviously of the opinion that Kirk Hiatt was the informant. He subpoenaed Hiatt to appear at the hearing on the motion to suppress. When advised of his rights by the court, Hiatt requested counsel be appointed for him. When called to the witness stand Hiatt took the Fifth Amendment and refused to answer most of the questions propounded by defendant's counsel to him. At the conclusion of this hearing the district court overruled the defendant's motion to suppress evidence. The court made extensive findings of fact. The trial court specifically found that the search of the defendant Deffenbaugh on April 16, 1973, by Officer Shults was in violation of the defendant's constitutional rights. The trial court further found that there was no evidence to show that the blue box containing narcotics found in the possession of the defendant on execution of the search warrant on April 18 was the identical blue box discovered in the possession of Bruce Davis on April 16 and that the affidavit for the search stated facts sufficient to show probable cause so as to justify the issuance of the search warrant by Magistrate Jones on April 18. The trial court specifically found that the information contained in the affidavit which was the basis of the search warrant issued on April 18 was from a fully and completely independent

source, the confidential informant, and was not the result of information obtained from the illegal search of defendant Deffenbaugh on April 16. On the basis of these findings the district court overruled the motion to suppress. The major issues which are raised on this appeal arise from the refusal of the district court to suppress the evidence of narcotics found in defendant's possession at his home on execution of the search warrant on April 18, 1973.

The defendant's first point on this appeal is that the court erred in overruling the defendant's motion to suppress the evidence obtained in the execution of the search warrant on April 18, 1973. In support of his position the defendant relies upon the "fruit of the poisonous tree doctrine". The fruit of the poisonous tree doctrine is one facet of the exclusionary rule of evidence, which bars the admissibility in a criminal prosecution of evidence obtained in the course of unlawful searches and seizures. In that context, the fruit of the poisonous tree doctrine is held to extend the scope of the exclusionary rule to bar not only evidence directly seized, but also evidence indirectly obtained as a result of information learned or leads obtained in the unlawful search. When applicable, the fruit of the poisonous tree doctrine bars not only derivative physical evidence, but also derivative testimonial evidence, such as confessions and admissions obtained as a result of confronting the accused with information learned in an unlawful search, and the testimony of witnesses discovered as a result of an unlawful search. (*Wong Sun v. United States,* 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 [1963]; *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 64 L. Ed. 319, 40 S. Ct. 182 [1920]; and *Nardone v. United States,* 308 U. S. 338, 84 L. Ed. 307, 60 S. Ct. 266 [1939].) The doctrine was recognized and applied to exclude proffered evidence in *State v. Lekas,* 201 Kan. 579, 442 P. 2d 11. The standard for determining whether proffered evidence is the fruit of the poisonous tree was enunciated in *Wong Sun.* There the United States Supreme Court stated that the fruit of the poisonous tree doctrine is inapplicable where the government learns of the evidence from an independent source or one wherein the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. It is the position of the defendant Deffenbaugh that the information obtained by the police which was the factual basis for the search warrant executed on April 18, 1973, was directly connected with and the result of the illegal

search of the defendant Deffenbaugh on April 16. The state contends that there was no connection and that the information which was the basis of the search warrant obtained on April 18 came from a completely independent source, the confidential informant. This was the issue of fact which had to be determined by the district court at the hearing on the motion to suppress.

The district court found that the affidavit and search warrant of April 18, 1973, did not emanate from the unlawful search on April 16, 1973, but from a fully and completely independent source, the confidential informant. This finding by the trial court is supported by the evidence and cannot be disturbed on this appeal. Furthermore the testimony of Kirk Hiatt, which was furnished the court by the defendant on his supplemental motion for a new trial, clearly established that it was Kirk Hiatt, then a confidential informant, who had furnished the information which resulted in the search warrant of April 18. As pointed out above Kirk Hiatt had been a paid informer and undercover agent for the Johnson county police authorities for months prior to the robbery of the KU Medical Center on April 11, 1973. At the time Hiatt called Officer Shults on April 16 at the request of police Officer Buford, it does not appear that Hiatt knew Deffenbaugh had been searched or that the police had obtained any information from Deffenbaugh pertaining to a blue box. It seems obvious to us that the illegal search and interrogation of the defendant Deffenbaugh by the Leawood police officers was completely independent of and had nothing to do with the flow of information from Hiatt to the police officers. Under these circumstances the evidentiary record does not support the position of the defendant Deffenbaugh that the evidence of narcotics found in defendant's possession on April 18, 1973, was inadmissible under the fruit of the poisonous tree doctrine. We therefore, reject the defendant's first point as being without merit.

The defendant's next point is that the district court erred in failing to compel Kirk Hiatt to answer questions propounded by defendant's counsel at the hearing on the motion to suppress. Hiatt was represented by counsel upon whose advice Hiatt relied in refusing to testify. Under the circumstances we cannot say that the trial court should have required Hiatt to testify against himself. We cannot see how the defendant could reasonably contend that his right of confrontation and cross-examination of witnesses guaranteed him by the Sixth and Fourteenth Amendments to the Constitution

of the United States was violated. In our judgment the right of confrontation is not involved here because the state never called Hiatt to testify in its behalf against the defendant. It was the defendant Deffenbaugh who was seeking to compel Hiatt to testify. We find no error in the refusal of the trial court to compel Kirk Hiatt to testify against himself contrary to advice of counsel.

The defendant maintains that the trial court erred in failing to compel the state to disclose the name of the confidential informant at the hearing on the motion to suppress evidence. It seems clear from the record that the defendant's counsel knew that the confidential informant was Kirk Hiatt. Furthermore, the governmental privilege against disclosure of the identity of an informer is well established and long familiar to the law of evidence. K. S. A. 60-436 places a broad discretion in the trial judge to require or refuse to require the disclosure of the name of an informer. When the issue is probable cause for search, and not guilt or innocence of the defendant, the state generally is not required to disclose the identity of an informant. (*State v. Robinson,* 203 Kan. 304, 454 P. 2d 527.) We cannot say here that the trial court abused its discretion in refusing to compel the state to disclose the identity of the confidential informant since the issue at the hearing was probable cause for the search and not guilt or innocence of the defendant.

As his fourth point the defendant maintains that the court erred in imposing an increased sentence under K. S. A. 21-4504. Here the trial court sustained the state's motion for an increased sentence and sentenced the defendant to concurrent sentences of three terms of six to twenty years in the state penitentiary and two terms of one year in the county jail. At the time of sentence there was evidence presented that defendant had been previously convicted of a class C felony, possession and sale of LSD. Under the circumstances we cannot say that the trial court abused its discretion in imposing the sentence which it did impose. Nor can we say that the increased sentence here constituted cruel and unusual punishment prohibited by the Constitution of the United States.

The defendant's final point is that the court erred in overruling his motion for a new trial based on the discovery of new evidence, the testimony of Kirk Hiatt in the Wyandotte county proceeding that he was the confidential informant who had supplied the information to the police officers. We find nothing in this testimony which would have justified the district court in granting a new trial.

The testimony of Hiatt clearly showed that he was the confidential informant and had been serving as such for months prior to April of 1973. This testimony of Hiatt's clearly showed that there was no connection between the search of defendant Deffenbaugh on April 16 and the information which was the basis of the search warrant obtained on April 18, 1973.

For the reasons set forth above the judgment of the district court is affirmed.

FROMME, J., not participating.