No. 48,398

STATE OF KANSAS, *Appellant,* v. BRENDA DOWDY, KEITH BANKS, JUDY FINLAY, DANNY HANSON, SYDNEY SCANLON, JOHN THOMAS FINLAY, LARRY HAITH, MYRON HAITH, TED BRYANT, ALFRED HILL, LEO J. MCMAHON, MICHAEL J. BROADFOOT, BOYD DOUGLAS RANSOM, *Appellees.*

(563 P.2d 425)

Opinion filed April 9, 1977.

*Kiehl Rathbun,* [Former] Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, and *Dennis W. Moore,* District Attorney, were with him on the brief for the appellant.

*Michael Lerner,* of Barnett & Lerner, Chartered, of Kansas City, argued the cause and was on the brief for Brenda Dowdy, Larry Haith, Myron Haith and Michael J. Broadfoot, appellees.

*George W. Earnshaw* and *Janine Hassler,* of Ivan and Earnshaw, of Shawnee Mission, were on the brief for Danny Hanson, appellee.

*James Bradley,* of Olathe, was on the brief for Judy Finlay, appellee.

*Hosea Sowell,* of Kansas City, was on the brief for Keith Banks, appellee.

*Gerald Bressel,* of Kansas City, Missouri, was on the brief for Larry Haith and Myron Haith, appellees.

*Robert G. Duncan,* of Kansas City, Missouri, was on the brief for Alfred Hill and Leo J. McMahon, appellees.

The opinion of the court was delivered by

KAUL, J.: This is an interlocutory appeal from an order of the trial court sustaining a motion to suppress evidence obtained as a result of authorized eavesdropping. (K. S. A. 22-2514, *et seq.,* [Laws of 1974, Ch. 150], [Secs. 22-2514, 22-2515, 22-2516 and 22-2517 were amended by Laws of 1976, Ch. 165, now K. S. A. 1976 Supp.].) The state's appeal is specifically authorized by K. S. A. 22-2516 (9) (*b*) (*i*), now 1976 Supp.

The central issue involved is whether the Kansas authorized eavesdropping act, in effect at the time (1975), is more permissive than the wiretap authorization provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U. S. C. Secs. 2510-2520), thus rendering our act unconstitutional and any wiretaps authorized thereunder fatally defective and necessitating the suppression of any evidence obtained thereby.

As a result of evidence obtained by a court ordered wiretap, Brenda Dowdy and Keith Banks were arrested and charged with conspiracy to sell heroin. An additional charge of possession with the intent to sell heroin was made against Brenda Dowdy. Both of these defendants filed motions to suppress the wiretap evidence, challenging the constitutionality of 22-2514, *et seq.* These motions were heard and initially denied by the trial court. The case against Dowdy and Banks thereafter proceeded to a jury trial in which the defendants were convicted as charged.

In the investigation of an entirely separate case, another court order authorizing electronic surveillance was granted. As a result of interceptions made in executing this later order, Danny Hanson, Sydney Scanlon, John T. Finlay, Judy Finlay, Larry Haith, Myron Haith, Ted Bryant, Alfred Hill, Leo J. McMahon and Michael J. Broadfoot were all charged with conspiracy to sell marijuana. Additionally, John T. Finlay was charged with possession of amphetamines and Sydney Scanlon with possession of cocaine. The connection of the remaining person named as de-

fendant in these cases, Boyd Douglas Ransom, is not disclosed in the record.

All of the defendants in the marijuana conspiracy case also filed suppression motions challenging the constitutionality of 22-2514, *et seq.* During this same time period the defendants in the heroin conspiracy case filed motions for a new trial, asking for a rehearing on the constitutionality of the above mentioned act.

Upon the motion of the district attorney these constitutional challenges were consolidated for hearing. After hearing evidence on these motions, on February 27, 1976, the trial court, reversing its prior decision, declared the act unconstitutional because of the omission in the Kansas statutes of the 90-day inventory notice provision of 18 U. S. C. Sec. 2518(8)(d). Accordingly, the court suppressed all wiretap evidence obtained in both of these cases and sustained the heroin conspiracy defendants' motions for a new trial. The trial court rested its ruling on our decision in *State v. Farha,* 218 Kan. 394, 544 P. 2d 341, which was filed December 13, 1975. Thereafter the state perfected this appeal.

In rendering its decision, the trial court made a comprehensive analysis of our opinion in *Farha* and concluded that the failure of our 1974 act to include a 90-day inventory notice provision comparable to 18 U.S.C. Sec. 2518(8)(d), made it more permissive than the federal act thereby rendering it unconstitutional, which, in turn, compelled the suppression of the evidence in question. The trial court took a second look at the constitutional issue on the state's motion for a rehearing, but reaffirmed its previous ruling. We are informed that in response to the trial court's first decision on February 27, 1976, the legislature, then in session, along with other amendments to the 1974 act, added subsection (*d*) to K. S. A. 22-2516(7). (See Ch. 165, Laws of 1976.) The language of the new subsection (*d*) closely follows the language of 18 U. S. C. Sec. 2518(8)(d), the corresponding subsection of the federal act.

In attacking the trial court's suppression order, the state specifies three interrelated points on appeal. The state first contends our 1974 act is not more permissive than the federal act; secondly, that even if the 90-day inventory notice provision is a central or functional safeguard in the federal statutory scheme, suppression is not automatically required because of the omission of a similar provision in our act. In its third point the state claims error by the

trial court in ordering suppression in the absence of a finding that defendants had been prejudiced by the omission of the provision of the Kansas act.

While we were not ruling on the specific points raised by the state herein, our analysis of federal—state interaction with respect to eavesdropping in *In re Olander*, 213 Kan. 282, 515 P. 2d 1211, and *State v. Farha*, supra, to a large extent settles the issues raised herein.

The constitutionality of the 1971 Kansas act, in effect at the time, was not challenged in *Olander*, but in disposing of the issue therein we recognized that the federal statutes established minimum standards for the states as well as for the federal government. We said:

"The limitations set by the federal statute are to be observed by state authorities, but we do not understand that a state is prohibited from imposing even more restrictive requirements than are set out in the federal law." (p. 286.)

Two years after *Olander* we were confronted with a constitutional challenge to the 1971 act in *Farha* even though the act had been repealed and replaced by the 1974 act before the case reached us. *Farha* involved numerous eavesdropping orders or electronic search warrants issued under the 1971 act in Shawnee and Sedgwick counties and one order issued in Sedgwick under the 1974 act. We noted that the constitutional requirements of *Berger v. New York*, 388 U. S. 41, 18 L. Ed. 2d 1040, 87 S. Ct. 1873, were embodied in the federal act and proceeded to compare our 1971 act with 18 U. S. C. Secs. 2510-2520. We found our 1971 act to be deficient in numerous respects in its conformance to the mandate of the federal statutes. We held the 1971 act to be unconstitutional and further that the evidence obtained in the intercept must be suppressed. We reaffirmed what had previously been said in *Olander* concerning state compliance with minimum federal statutory guidelines. We said in *Farha*:

". . . [A]lthough a state may adopt a statute with standards more stringent than the requirements of the federal law (*Alderman v. United States*, 394 U. S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961; *Cooper v. California*, 386 U. S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788), a state may not adopt a statute with standards more permissive than those set forth in Title III (*In re Olander*, 213 Kan. 282, 515 P. 2d 1211). 'A State statute would be preempted where the State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' (*Commonwealth v. Vitello, Mass.*, 327 N. E. 2d 819, 835). *If a state wiretap statute is more permissive than the federal act, any wiretap authorized*

*thereunder is fatally defective and the evidence thereby obtained is inadmissible under* 18 U. S. C. Sec. 2515." (p. 400.) (Emphasis supplied.)

We recognized in *Olander* and *Farha* that as a result of the decision in *Berger v. New York,* supra, and the response of Congress thereto, the only discretion left to a state in the eaves-dropping area was whether to enact eavesdropping legislation more restrictive than the provisions of the federal act. However, since the federal act was not self-executing, if a state desired authorized eavesdropping, the enactment of state legislation was necessary. Our legislature responded by enacting the 1971 law, followed by the 1974 law (in question here) and the 1976 amendments thereto.

We turn then to the question whether our 1974 act was more permissive than the federal act by reason of the omission of the 90-day inventory notice provision appearing in 18 U. S. C. Sec. 2518(8)(d) which reads:

"(d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7) (b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—

"(1) the fact of the entry of the order or the application;

"(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

"(3) the fact that during the period wire or oral communications were or were not intercepted. The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."

Immediately following this provision in the federal statute is Sec. 2518(9) which provides:

"(9) The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above

information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information."

These two provisions of the federal statute deal with post-use of intercepts. The first, (8)(d), is commonly referred to as the 90-day inventory notice provision and by its terms may be postponed, for good cause shown, but not waived.

As previously indicated 2518(8)(d) of the federal act was omitted in our 1974 act. However, 2518(9) was enacted verbatim by the Kansas legislature and was codified as K. S. A. 1976 Supp. 22-2516(8). In an attempt to avoid the effect of the "more permissive" rule adhered to in *Olander* and *Farha* the state now argues that the Kansas act, by omitting the 90-day inventory notice provision, but including the ten-day period notice provision, cannot be said to be more permissive than the federal act. The state's argument is without merit. It is clear that these two postintercept notice provisions were intended to and do provide protection for entirely different groups of people. The ten-day proviso does not afford the same protection to the general public provided by 2518(8)(d), for only those persons charged with crime or otherwise afforded a hearing are encompassed within its mandate. Under such circumstances, to agree that the provision which is more strict in its protection of persons charged with crime thereby provides parallel protection for the general community is illogical. The statute provides that in addition to persons named in the order, the judge may, in the interest of justice, cause the prescribed inventory to be served on such other parties to the intercepted communications as the judge, in his discretion, may determine to be in the interest of justice. In other words, some protection is afforded those parties unnamed, but overheard in the intercepted communications. In *United States v. Chun*, 503 F. 2d 533 (9th Cir. 1974), the provision in question was held to be a central or at least a functional safeguard in the statutory scheme. The court carefully explains that 2518(8)(d) requires not only a proper inventory notice to those persons named in the wiretap order, but also to those persons overheard, but not named. The court points out that this provision was incorporated into the act by an amendment by Senator Hart and that the purpose and intent thereof is shown by the legislative history. The construction placed on 2518(8)(d) by the Ninth Circuit Court of Appeals in *Chun* was adopted by the United States Supreme Court in the recent case of *United States v.*

*Donovan,* 429 U. S. 413, 50 L. Ed. 2d 652, 97 S. Ct. _____ 1977).

We hold that the failure of K. S. A. 22-2514 [now 1976 Supp.] to include a 90-day inventory notice provision comparable to 18 U. S. C. Sec. 2518(8)(d), causes the Kansas act to be more permissive than the federal statutory scheme.

In its second point, the state argues that even assuming 2518(8)(d) is a central or functional safeguard in the federal statutory scheme, suppression is not automatically required. In *United States v. Eastman,* 465 F. 2d 1057 (3rd Cir. 1972), the government appealed from a suppression order entered because the 90-day inventory notice was not filed by reason of a waiver. On appeal the government, as does the state at bar, argued that suppression was improper because no prejudice to defendant was shown. In rejecting the government's argument the *Eastman* court said:

"We cannot agree with the Government's position for two reasons:

"(1) 18 U. S. C. Sec. 2518(10) (a) states *inter alia,* 'Any aggrieved person in any trial . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—(i) *the communication was unlawfully intercepted;* (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval.' (Emphasis added). As is pointed out in the admirable opinion of Judge Becker in *United States v. Narducci* in a closely analogous situation, an exclusionary rule has been written into the Act by Sec. 2515, which states, *inter alia:* 'Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial. . . . before any court . . . *if the disclosure of that information would be* in violation of this chapter.' (Emphasis added). That Section 2515 is exclusionary is now settled beyond all doubt in *Gelbard v. United States,* and *United States v. Egan,* 408 U. S. 41, 92 S. Ct. 2357, 33 L. Ed. 2d 179 (1972)." (p. 1061.)

Further in the opinion, the *Eastman* court pointed out that in view of the legislative history of the act, the 90-day notice provision of the act must, of course, be read in the light of Sec. 2518 (10) (a), which was said to be an integral part of the act. K. S. A. 22-2516 (9) *(a)* [now 1976 Supp.] is identical to Sec. 2518(10)(a). The *Eastman* court concluded:

"We construe the statutes, 18 U. S. C. Sec. 2518(8)(d) and 18 U. S. C. Sec. 2518(10)(a)(i), as requiring the exclusion of wiretaps secured in violation of their wording which implements the Fourth Amendment. . . ." (p. 1063.)

In its brief on appeal, the state cites cases such as *United States v. Chun,* supra; *United States v. Giordano,* 416 U. S. 505, 40 L. Ed. 2d 341, 94 S. Ct. 1820; and *United States v. Chavez,* 416 U. S. 562, 40 L. Ed. 2d 380, 94 S. Ct. 1849, wherein language appears indicating that unsubstantial or inadvertent violations of the act may be cured if the underlying statutory purpose of 2518(8)(d) has been satisfied. (See also *United States v. Civella,* 533 F. 2d 1395 [8th Cir. 1976.]) However, we believe the holding in *Eastman* must control where the provision has been ignored in proceedings under the act or omitted from the statute as in the case at bar.

The state further contends that since 22-2516 has since been amended to include the 90-day inventory notice provision, the exclusionary rule should not be applied, citing *Stone v. Powell* (1976), 428 U.S. 465, 49 L.Ed.2d 1067, 96 S.Ct. 3037. The case is a habeas corpus proceeding involving a state prisoner. Application of the exclusionary rule to state proceedings was modified, but the decision was specifically limited to habeas corpus relief. In this connection, the *Powell* court said:

". . . [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. . . ." (96 S. Ct. p. 3052.)

Secondly, as pointed out in *Eastman,* the specific intention of Congress to make the exclusionary rule applicable in the area of wiretaps is clearly demonstrated by the enactment of 18 U. S. C. Sec. 2518(10)(a). Our legislature followed by enacting K. S. A. 22-2516(9)(*a*), now 1976 Supp. The availability of the suppression remedy for violations of the statutory scheme of Title III, as distinguished from constitutional violations, turns on the provisions of the act itself rather than on the judicially fashioned exclusionary rule aimed at deterring violations of the Fourth Amendment rights. (*United States v. Giordano,* supra.)

We find no merit in the state's exclusionary rule argument.

Finally, the state claims the trial court erred in suppressing evidence without making a finding that defendants had been prejudiced by the failure of 22-2516 to include the 90-day inventory notice provision. The state cites no additional authorities in support of this point.

The trial court concluded that prejudice was irrelevant since the Kansas statute was more permissive than the federal act. The trial court's conclusion accords with what was said by this court in *State v. Farha*, supra. The state's argument with respect to prejudice flies in the face of the holding in *Eastman* concerning the application of 18 U. S. C. Sec. 2518 (10) (a) (i).

The judgment is affirmed.

FATZER, C. J., dissenting from Syl. 5 and corresponding portion of the opinion.